UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JEFFREY P.,

               Plaintiff,

        v.

ANDREW M. SAUL, Commissioner of
Social Security Administration,

               Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. ED CV 18-2004-SP

MEMORANDUM OPINION AND
ORDER

## I.

## __INTRODUCTION__

On September 20, 2018, plaintiff Jeffrey P. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of a period of disability and disability insurance benefits ("DIB").

Plaintiff presents what amount to four issues for decision: (1) whether the Administrative Law Judge ("ALJ") properly discounted plaintiff's subjective complaints; (2) whether the ALJ properly considered the opinions of plaintiff's

treating physicians; (3) whether the ALJ's residual functional capacity ("RFC") determination was supported by substantial evidence; and (4) whether the ALJ was required to address and resolve an alleged conflict between the testimony of a vocational expert and a social security ruling. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 1-16; *see* Memorandum in Support of Defendant's Answer ("D. Mem.") at 1-11.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred by failing to properly consider plaintiff's testimony and the opinions of the treating physicians, and improperly assessed plaintiff's RFC. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions set forth in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was 45 years old on his alleged disability onset date. AR 92. He has a GED and past relevant work as a delivery driver. *Id.* at 51, 54.

On August 13, 2014, plaintiff filed an application for disability and DIB, alleging disability beginning April 10, 2014 due to severe nerve damage in his right leg, right calf, and right foot, surgery on both elbows, and degenerative back disease. *Id.* at 92. The Commissioner denied plaintiff's application initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 112-26.

On December 22, 2016, and May 18, 2017, plaintiff represented by counsel, appeared and testified at two hearings before the ALJ. *Id.* at 44, 53-63, 68, 84-87. At the December 22, 2016 hearing, the ALJ heard testimony from vocational expert ("VE") Mr. Brodinski. *Id.* at 51-53, 63-64. On the May 18, 2017 hearing, the ALJ heard testimony from VE Robin Scher and medical expert Louis A. Fuchs, M.D. *Id.* at 73-90. On June 29, 2017, the ALJ denied plaintiff's claim for benefits.

*Id.* at 22-34.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since April 10, 2014, the alleged onset date. *Id.* at 24.

At step two, the ALJ found plaintiff suffered from the following severe impairments: lateral epicondylitis of the right elbow, status post surgery for a right epicondylectomy on May 27, 2011; posttraumatic arthritis of the left elbow, status post surgery for internal and external fixation of a left distal humerus intraarticular fracture on January 22, 2006; lumbar spondylosis with sciatica, status post surgery for a laminectomy and foraminotomy at L5-S1 on May 15, 2014; major depressive disorder; generalized anxiety disorder; and attention deficit hyperactivity disorder ("ADHD"). *Id.* at 24-25.

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 ("Listing"). *Id.* at 25.

The ALJ then assessed plaintiff's RFC,[1] and determined plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with some exceptions. *Id.* at 26. In particular, he could: lift and carry 10 pounds occasionally and frequently; stand and walk for at least two hours in an eight-hour workday; sit for about six hours in an eight-hour workday; never crouch, crawl, climb, stoop, or kneel; and handle and finger on no more than a frequent basis. *Id.* The ALJ also

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

found plaintiff is limited to unskilled work involving simple, repetitive tasks. *Id.*

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a delivery driver. *Id.* at 32.

At step five, the ALJ found there were jobs that existed in significant numbers in the national economy that plaintiff could perform, such as a microfilming document preparer and call out operator. *Id.* at 33-34. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined in the Social Security Act. *Id.*

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-4. The ALJ's decision stands as the final decision of the Commissioner.

### III.

### <u>STANDARD OF REVIEW</u>

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

# IV.

# DISCUSSION

## A. The ALJ Did Not Offer a Clear and Convincing Reason for Discounting Plaintiff's Testimony

Plaintiff argues the ALJ erred by rejecting plaintiff's subjective symptom testimony on the ground that it was inconsistent with the objective medical evidence. P. Mem. at 3-8. Plaintiff argues this reason was the only reason given, and this reason alone is not a clear and convincing reason for discounting his testimony. P. Mem. at 1-7; Reply at 1-5.

The ALJ must clearly articulate specific reasons for the weight given to a claimant's alleged symptoms, supported by the record. Social Security Ruling ("SSR") 16-3p.[2] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Trevizo v. Berryhill*, 862 F.3d

---

[2]   "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan v. Massanari*, 246 F.3d 1195, 1203 n.1 (9th Cir. 2001) (internal citations omitted).

987, 1000 (9th Cir. 2017) (citing *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, "[i]f such evidence exists and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so," and those reasons must be supported by substantial evidence in the record. *Id.*; *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

An ALJ may consider several factors in weighing a claimant's testimony at the second step, including: ordinary techniques of credibility evaluation such as a claimant's reputation for lying; the failure to seek treatment or follow a prescribed course of treatment; and inconsistencies with the claimant's testimony or between the testimony and claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Ynzunza v. Astrue*, 2010 WL 3270975, at *3 (C.D. Cal. Aug. 17, 2010). But "subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted). The ALJ must also "specifically identify the testimony [from the claimant] that she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan*, 246 F.3d at 1208).

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 27. At the second step, because the ALJ did not find any evidence of malingering, the ALJ was required to provide clear and convincing reasons for discounting plaintiff's testimony. Here, the ALJ discounted plaintiff's testimony because

plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not consistent with the medical evidence of record, including a dearth of postoperative treatment records for bilateral elbow dysfunction, initial diagnostic imaging of the lumbar spine showing only mild degenerative changes (Exhibits 8F and 9F at 3), subsequent electrodiagnostic testing showing only mild chronic denervation in the lower extremity muscles (Exhibit 13F at 4), and reports of unremarkable mental status examinations (Exhibit 33F at 11, 16). *Id.* The court finds the ALJ did not provide sufficient, clear and convincing reasons for finding plaintiff's testimony not credible.

An ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but lack of objective medical evidence may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see Rollins*, 261 F.3d at 856-57 (asserting a lack of corroborative objective medical evidence may be one factor in evaluating credibility). Lack of corroborating objective medical evidence was the primary reason given by the ALJ here. Although the ALJ accepted much of plaintiff's testimony, he specifically rejected plaintiff's assertion that he was unable to work. AR at 27; *see Treichler*, 775 F.3d at 1102 (finding the ALJ must "specifically identify the testimony [from the claimant] that she or he finds not to be credible and . . . explain what evidence undermines the testimony.").

The ALJ rejected plaintiff's allegations of lumbar spine impairment and severe nerve damage because the initial diagnostic imaging of the lumbar spine showed only mild degenerative changes, and subsequent electrodiagnostic testing showed only mild chronic denervation in the lower extremity muscles. AR at 27. With respect to the initial imaging of plaintiff's lumbar spine, the ALJ cites to a magnetic resonance imaging ("MRI") of the lumbar spine from October and November 2012 showing only mild degenerative changes. *Id.* at 27, 848-850. But

the 2012 MRIs of plaintiff's lumbar spine are of limited relevance since plaintiff alleges he became disabled in 2014. *See id.* at 92; *Carmickle*, 533 F.3d at 1165 ("Medical opinions that predate the alleged onset of disability are of limited relevance."). Since then, plaintiff's lumbar spine impairment had not improved, and indeed, became more severe. A medical assessment from April 2014 reveals a decreased range of motion in plaintiff's lower back, tenderness, and spasm, and as a result, plaintiff was given Toradol injections for his pain. AR at 616-17. Because the more conservative treatment for plaintiff's lumbar spine failed, Dr. Gene Choi, an orthopedic surgeon, performed surgery on plaintiff for a laminectomy and foraminotomy on May 15, 2014. *Id.* at 477-78. Three months after plaintiff's laminectomy, Dr. Choi's evaluation revealed that plaintiff had decreased range of motion, tenderness, motor loss at 4/5, and positive straight leg raising. *Id.* at 840-41. Further, Dr. Choi reported that a post-surgery MRI showed persistent or recurrent disc herniation, and noted that plaintiff possibly had permanent nerve injury. *Id.* at 842.

The ALJ also noted that electrodiagnostic testing performed by Dr. Ibrahim on February 16, 2016 showed mild chronic denervation (*see id.* at 27, 870); however, the last MRI from September 12, 2016 indicates that plaintiff had moderate to severe disc space narrowing at L5-S1 with moderate to severe right and moderate left neural foraminal narrowing. *Id*. at 29, 874-75; *see Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) ("Where a claimant's condition is progressively deteriorating, the most recent medical report is the most probative.") (citation omitted). Thus, the 2012 MRIs of plaintiff's lumbar spine and the subsequent electrodiagnostic testing showing mild denervation are not clear and convincing reasons for rejecting plaintiff's testimony given that recent evidence regarding plaintiff's lumber spine and nerve damage indicates moderate to severe impairments.

In addition, the ALJ cites plaintiff's "unremarkable mental status examination" as a reason to discount his complaints. AR at 27. The ALJ relies on reports by psychiatrist Dr. David Atwood, which note that plaintiff had unremarkable appearance, appropriate and congruent behavior, normal speech, linear thought process, no delusions or hallucinations, and appropriate and fair judgment. *Id.* at 1086. Despite plaintiff's unremarkable mental status examination, a review of Dr. Atwood's psychological progress notes reveal that plaintiff was diagnosed with generalized anxiety disorder and major depression. *See id.* at 1082-85. Additionally, Dr. Atwood prescribed plaintiff with medication for his depression, anxiety, and sleep latency. *Id.* But regardless of plaintiff's mental health status, plaintiff did not allege that he was limited in his ability to work due to mental health impairments. *See id.* at 27. Thus, the fact that plaintiff had an unremarkable mental status examination is not a clear and convincing reason to discount plaintiff's testimony that he was unable to work.

Contrary to plaintiff's contention, the ALJ gave a second reason for discounting plaintiff's testimony beyond lack of supporting objective medical evidence, namely, that there was a dearth of postoperative treatment records for bilateral elbow dysfunction. AR 27; *see Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment.") (internal quotation marks and citation omitted); SSR 96-7p ("the [plaintiff]'s statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints"). But a review of the record reveals that plaintiff had a legitimate reason for not seeking further treatment given that surgery was not a viable option for his elbow. *See* AR at 1067. During a consultation in January 2017, plaintiff was referred to Loma Linda University due to the complexity of his elbow injury and the possibility of "total elbow replacement." *Id.* at 1056-1058. On March 28,

2017, Dr. Fabio Caetano Figueiredo evaluated plaintiff regarding his left elbow condition and discouraged plaintiff from further procedures since there was a significant chance that such treatment would exacerbate his elbow impairments. *Id.* at 1067. In addition, plaintiff was unable to seek treatment for about six months to a year in 2014, because he lost his health insurance when he was terminated from his job. *See id.* at 58, 837. Thus, the lack of postoperative treatment records relating to plaintiff's elbow is not a clear and convincing reason to discount plaintiff's testimony given that further treatment would have exacerbated plaintiff's elbow impairment and there was a period of time in which plaintiff could not afford any treatment. *See Carmickle*, 533 F.3d at 1162 (citing *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007)) ("[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment."); *Orn*, 495 F.3d at 638 (finding claimant's failure to obtain medical treatment during period that he lacked insurance and could not afford any treatment could not be used as a basis to reject his credibility).

Accordingly, the ALJ failed to provide a clear and convincing reason supported by substantial evidence for discounting plaintiff's testimony.

**B.** **The ALJ Improperly Rejected the Opinions of Plaintiffs' Treating Physicians**

Plaintiff argues the ALJ erred by failing to properly weigh the opinions of his treating physicians, Dr. Choi and Dr. Almudhafar. P. Mem. at 8-12. Specifically, plaintiff contends the ALJ failed to provide legally sufficient reasons for rejecting their opinions. *Id.*

In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence. 20 C.F.R. §§

404.1527(b), 416.927(b).[3]  In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R.        §§ 404.1527(c), (e), 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's."  *Holohan*, 246 F.3d at 1202; 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.027(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen*, 80 F.3d at 1285; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285.  If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight.  *Lester*, 81 F.3d at 830.  If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it.  *Id.*  Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians.  *Id.* at 830-31.  The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

---

[3]   The Social Security Administration issued new regulations effective March 27, 2017.  All regulations cited in this decision are effective for cases filed prior to March 27, 2017.

1.    **1.**    **The Medical Opinions and Records**

2.      **a.**    **Treating Physicians**

Dr. Gene Choi, an orthopedic surgeon, treated plaintiff between April 2014 and April 2015. AR at 840, 843. Between April and August 2014, Dr. Choi examined plaintiff every two months. *Id.* at 840. Dr. Choi performed surgery on plaintiff for a laminectomy and foraminotomy at L5-SI on May 15, 2014. *Id.* at 477-79. This procedure was completed to address plaintiff's lumbar disc disease with radiculopathy which caused numbness, heaviness, and cramping in his right calf, along with mild back pain. *Id.* at 477. Dr. Choi examined plaintiff three months after his laminectomy, and noted that plaintiff had a decreased range of motion, tenderness, motor loss at 4/5, and positive straight leg raising. *Id.* at 840-41. Dr. Choi advised plaintiff to avoid reaching at a distance and lifting, and indicated that plaintiff was still experiencing numbness and heaviness in the right calf when he walks or stands. *Id.* at 841-42. Dr. Choi reported that a post-surgery MRI showed persistent or recurrent disc herniation, and noted that permanent nerve injury is a possibility. *Id.*

On April 2, 2015, Dr. Choi completed a Residual Functional Capacity Questionnaire regarding plaintiff's spine. *Id.* at 843-47. Therein, Dr. Choi diagnosed plaintiff with posttraumatic arthritis of the left elbow and lumbar disc disease with radiculopathy. *Id.* at 843. Dr. Choi indicated plaintiff experienced numbness and heaviness with spasms, and decreased range of motion to the left elbow. *Id.* Dr. Choi also reported positive straight leg raising, abnormal gait, muscle weakness, and sensory loss. *Id.* Dr. Choi then opined plaintiff: could lift and carry 20 pounds rarely and 10 pounds occasionally; could sit for only an hour at a time, and for a total of two hours in an eight-hour workday; could stand for 30 minutes at a time; could stand or walk for less than a total of two hours in an eight-hour workday; required the option to walk every 45 minutes for five minutes; and

would need to miss four or more days of work per month. *Id.* at 844-47.

On July 20, 2016, Dr. Farah Almudhafar, plaintiff's primary care physician provided a completed Medical Assessment of Ability to do Work-Related Activities. *Id.* at 872. Dr. Almudhafar opined plaintiff: could lift and carry under 10 pounds; could stand and walk for about 30 minutes total in an eight-hour workday; and could sit for about 30 minutes total in an eight-hour workday. *Id.* Dr. Almudhafar also indicated plaintiff's upper extremities were limited to: occasional reaching of the right arm and no reaching of the left arm; occasional grasping with either hand; and occasional fine manipulation with the left hand and none with the right. *Id.*

On November 28, 2016, Dr. Almudhafar provided a supplemental Medical Assessment of Ability to do Work-Related Activities, in which she opined the same limitations as in her prior opinion, and also noted that plaintiff was likely to be absent from work more than three times a month due to his impairments. *Id.* at 1050. Dr. Almudhafar indicated that the basis for her opinion was her diagnostic impressions of lumbosacral spondylosis, lumbar radiculopathy, and chronic healed left humerous fracture and right tennis elbow. *Id.*

### b.   **Examining Physician**

On October 20, 2016, Dr. William Wang, a consultative examiner, completed an orthopedic evaluation of plaintiff. Plaintiff presented complaints of bilateral elbow and low back pain. *Id.* at 887. A physical examination was completed, which revealed diffuse tenderness to palpation over the right lateral epicondyle, and Dr. Wang observed a full range of motion of the right elbow. *Id.* at 890. Plaintiff was found to have a reduced range of motion of the left elbow. *Id.* Dr. Wang found diffuse tenderness to palpation in the midline of the lumbar spine and a reduced range of motion of the lumbar spine. *Id.* at 889-90. Straight leg raising tests were positive at 45 degrees. *Id.* at 890. Dr. Wang's diagnostic

impressions revealed lateral epicondylitis of the right elbow, posttraumatic arthritis of the left elbow, and lumbar spondylosis with sciatica. *Id.* at 892.

Dr. Wang then provided a functional assessment, opining that plaintiff: could lift and carry 10 pounds occasionally and frequently; stand and walk for two hours in an eight-hour workday; and sit for six hours in an eight-hour workday. *Id.* Dr. Wang stated that plaintiff could never crouch, crawl, climb, stoop, or kneel. *Id.* He also opined that plaintiff is "frequently limited in performing gross and fine manipulations using the left upper extremity due to his post-traumatic elbow arthritis." *Id.*

### c.  <u>Non-Examining Physician</u>

During the May 18, 2017 hearing, the testifying medical expert Dr. Louis Fuchs, a Board Certified orthopedic surgeon, reviewed Dr. Wang's clinical findings and determined that plaintiff's motor strength appeared "quite satisfactory," but that he had some decreased sensation in the right lower extremity laterally. *Id.* at 78; *see id.* at 890-91. In reviewing plaintiff's nerve test conducted by Dr. Waseem Ibrahim on February 17, 2016, Dr. Fuchs concluded that the right H reflex was absent, but explained that he placed more weight on the physical exam which indicated that plaintiff's reflexes were normal. *Id.* at 79; *see id.* at 870. Dr. Fuchs then reviewed plaintiff's last MRI from September 12, 2016, and found that the neurological exams were reasonable. *Id.* at 79; *see id.* at 874-75. Dr. Fuchs noted that Dr. Wang found full range of motion of the shoulders and wrists, and plaintiff's elbows showed some tenderness and pain with motions. *Id.* at 81. Dr. Fuchs explained that he reviewed Dr. Wang's findings for weakness, reflex inequalities, muscle pains, and abnormality patterns, and found that neurological strength and sensory examination in the upper extremities were normal except for the right lower extremity. *Id.* Upon further questioning regarding plaintiff's left upper extremities, Dr. Fuchs stated that plaintiff was

limited to occasional flexion and extension of his left elbow. *Id.* at 83-84. Dr. Fuchs found that Dr. Wang's limitation that plaintiff could stand and walk for two hours in an eight-hour workday was reasonable. *Id.* at 82.

## 2. The ALJ's Findings

The ALJ determined plaintiff had the RFC to perform sedentary work, but with the limitations that he could: lift and carry 10 pounds occasionally and frequently; stand and walk for at least two hours in an eight-hour workday; sit for about six hours in an eight-hour workday; never crouch, crawl, climb, stoop, or kneel; handle and finger on no more than a frequent basis; and perform only unskilled work involving simple, repetitive tasks. *Id.* at 26.

In reaching his RFC determination, the ALJ credited the opinions of consultative examiner Dr. Wang and testifying medical expert Dr. Fuchs, finding that their opinions were consistent with the objective medical evidence. *See id.* at 30-32. The ALJ gave little weight to the medical opinions of Dr. Choi and Dr. Almudhafar on the basis that their opinions regarding plaintiff's functional and exertional limitations were inconsistent with the relevant medical evidence of record, including a dearth of probative postoperative treatment records for bilateral elbow dysfunction, initial diagnostic imaging of the lumbar spine showing only mild degenerative changes, and subsequent electrodiagnostic testing showing only mild chronic denervation in the lower extremity muscles. *See id.* at 29-30.; *Batson v. Comm'r*, 359 F.3d 1190,1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). In short, the ALJ rejected Dr. Choi's and Dr. Almudhafar's opinions for essentially the same reasons he rejected plaintiff's testimony that he could not work. *See AR* at 27.

1          **3.    The ALJ Failed to Properly Consider the Opinions of Dr. Choi**
2                 **and Dr. Almudhafar**

3          To reject a treating physician's opinion that is contradicted by other

4   opinions, the ALJ must provide specific and legitimate reasons supported by

5   substantial evidence for rejecting it. *Lester*, 81 F.3d at 830. Here, the opinions of

6   Dr. Choi and Dr. Almudhafar concerning plaintiff's functional limitations were

7   contradicted by the opinions of Dr. Wang and Dr. Fuchs. *Compare* AR at 843-47,

8   1050 *with* 79-84, 892. Although plaintiff characterizes Dr. Almudhafar's opinion

9   concerning plaintiff's right upper extremity limitations as uncontradicted (*see* P.

10  Mem. at 10-11), Dr. Almudhafar's observation that plaintiff was limited to

11  occasional reaching of the right arm (*see id.* at 872) is contradicted by Dr. Wang

12  who found that plaintiff was only frequently limited in performing gross and fine

13  manipulations with the left arm and not the right arm. *Id.* at 892. Thus, the ALJ

14  was required to provide specific and legitimate reasons supported by substantial

15  evidence for rejecting the opinions of plaintiff's treating physicians Dr. Choi and

16  Dr. Almudhafar.

17         As discussed above, a review of the medical record indicates that there is

18  more recent evidence regarding plaintiff's lumbar spine and elbow impairments

19  that contradicts and supersedes the evidence cited by the ALJ in rejecting Dr.

20  Choi's and Dr. Almudhafar's medical opinions. Specifically, plaintiff's lack of

21  elbow treatment does not undermine the opinions of Dr. Choi and Dr. Almudhafar

22  because further treatment was not a viable option for plaintiff, and there was a

23  period of time in which plaintiff could not afford any treatment. *See id.* at 58,

24  1067; *Carmickle*, 533 F.3d at 1162; *Orn*, 495 F.3d at 638. In addition, the 2012

25  initial diagnostic imaging of plaintiff's lumbar spine showing mild degenerative

26  changes was taken prior to plaintiff's alleged onset of disability. *See id.* at 848-

27  850. The ALJ ignores the more recent medical evidence regarding plaintiff's

28

lumbar spine and nerve impairments, in which Dr. Choi indicated that a post-surgery MRI continued to show moderate to severe right and moderate left neuroforaminal narrowing, persistent or recurrent disc herniation, and the possibility of permanent nerve damage. *Id.* at 477-78, 825-26, 841-42. Further, Dr. Choi observed plaintiff had a decreased range of motion, tenderness, decreased sensation, motor loss at 4/5, and positive straight leg raising. *Id.* at 840. Although a subsequent MRI showed only mild chronic denervation in the lower extremity muscles, a later 2016 MRI of plaintiff's lumbar spine showed moderate to severe disc space narrowing at L5-S1 with moderate to severe right and moderate left neuroforaminal narrowing. *Id.* at 29 (citing AR at 870), 874-75. As such, in reviewing the record as a whole, the evidence provided by the ALJ in rejecting the opinions of Dr. Choi and Dr. Almudhafar does not amount to a specific and legitimate reason supported by substantial evidence.

Moreover, the ALJ apparently did not consider the objective medical evidence underlying the opinions of Dr. Choi and Dr. Almudhafar. *See id.* at 29-30. With respect to Dr. Choi's opinion, the ALJ did not address Dr. Choi's observation that plaintiff had numbness and heaviness with spasms, decreased range of motion in the left elbow, positive straight leg raising, abnormal gait, muscle weakness, and sensory loss. *Id.* at 843. Likewise, the ALJ did not consider the basis of Dr. Almudhafar's opinion regarding plaintiff's functional limitations, including her diagnosis of plaintiff with lumbosacral spondylosis, lumbar radiculopathy, chronic healed left humerous fracture, and right tennis elbow. *Id.* at 1050. Thus, the ALJ erred by rejecting the opinions of Dr. Choi and Almudhafar without considering the basis for their opinions. *See Orn*, 495 F.3d at 635 ("[A]n ALJ must evaluate the physician's assessment using the grounds on which it is based.").

Accordingly, the ALJ failed to cite specific and legitimate reasons supported

by substantial evidence for rejecting the opinions of Dr. Choi and Dr. Almudhafar.

## C. The ALJ's RFC Determination Concerning Plaintiff's Left Upper Extremity Limitation Was Not Supported by Substantial Evidence

Plaintiff contends the ALJ's determination that plaintiff could use his left arm frequently was not supported by substantial evidence. P. Mem. at 12. Plaintiff further asserts that the ALJ's failure to consider plaintiff's left upper extremity limitation was harmful, because a vocational expert testified that with this limitation plaintiff would be considered disabled. *Id.* at 13.

In his RFC determination, the ALJ concluded that plaintiff "can handle and finger on no more than a frequent basis," meaning he could handle and finger up to two third of the time. AR at 26; *see* SSR 83-10 (defining "frequent" as occurring up to two thirds of the time). But the ALJ's determination appears to be inconsistent with the medical opinions of Dr. Wang and Dr. Fuchs, which indicate that plaintiff had more severe left upper extremity limitations. *See id.* at 84, 892. The consultative expert Dr. Wang determined that plaintiff "is frequently limited in performing gross and fine manipulations using the left upper extremity due to his post-traumatic elbow arthritis." *Id.* at 892. Dr. Wang's use of the words "frequently limited" is somewhat confusing. The ALJ apparently interpreted these words to mean plaintiff could perform manipulative work with his left upper extremity frequently. But Dr. Wang did not opine plaintiff could perform such actions frequently; under the plain meaning of the words, Dr. Wang opined plaintiff would be frequently limited – meaning limited two thirds of the time – in performing such actions. In other words, it appears Dr. Wang opined plaintiff could only perform manipulative actions with his left upper extremity one third of the time, or occasionally. *See* SSR 83-10 (defining "occasionally" as occurring up to one third of the time). This is also how Dr. Fuchs apparently interpreted Dr.

Wang's findings, since after reviewing Dr. Wang's report he found plaintiff would be restricted to occasional flexion and extension of his left upper extremity. *See id.* at 83-84.

The ALJ expressly credited the opinions of Dr. Wang and Dr. Fuchs, but he at least misinterpreted Dr. Wang's opinion with respect to plaintiff's left upper extremity, and he entirely disregarded Dr. Fuchs's opinion relating to plaintiff's left upper extremity limitations. *See Fleenor v. Berryhill*, 752 Fed. Appx. 451, 453 (9th Cir. 2018) (citing *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)) ("An ALJ may not cherry-pick a doctor's characterization of claimant's issues."). Thus, the ALJ erred in his RFC determination, but whether this error was harmless is less clear.

The first vocational expert, Mr. Brodinski, testified that if plaintiff were limited to occasional use of the left upper extremity he would be precluded from all work. *See* AR at 63. Although Dr. Fuchs found plaintiff's limitation to occasional use pertained only to flexion and extension, Dr. Wang's limitation to occasional use of the left upper extremity pertained to gross and fine manipulations. Mr. Brodinski reasoned that in order to do unskilled sedentary work, plaintiff must be able to use both upper extremities at least at the frequent level. *Id.* By contrast, the second VE, Robin Shear, testified that a limitation to occasional use of the left upper extremity would not change her opinion that there are jobs plaintiff could do. *Id.* at 84-85.

Plaintiff argues the ALJ was required to resolve this conflict between the two VEs, but he cites no authority so holding. Nonetheless, the ALJ appears to have improperly cherry picked and relied on different aspects of each VE's testimony without a legitimate rationale. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) ("Although it is within the power of the Secretary to make findings . . . and to weigh conflicting evidence, he cannot reach a conclusion first,

and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result.").

Given that this case must be remanded for the reasons discussed above, the court need not here decide the legal issue of whether the ALJ was required to resolve the conflict between the VEs. But on remand, the ALJ must reconsider the evidence concerning plaintiff's left upper extremity limitations in reassessing plaintiff's RFC, and should resolve any conflicts in VE testimony.

**D.** **The ALJ Need Not Resolve an Alleged Conflict Between the VE Testimony and a Social Security Ruling**

In addition to the conflict between the two VEs with respect to the effect of a limitation to occasional use of the left arm, plaintiff also argues the ALJ improperly relied on VE testimony indicating that plaintiff could perform certain occupations despite his inability to stoop because such testimony conflicts with SSR 96-9p. P. Mem. at 13-14. But as noted above, social security rulings do not have the force of law. *Holohan*, 246 F.3d at 1203 n.1. Moreover, SSR 96-9p states only that a complete inability to stoop "would significantly erode the unskilled sedentary occupational base" such that a finding of disability "would usually apply." *See* SSR 96-9. Contrary to plaintiff's interpretation, the SSR does not state that a complete inability to stoop necessarily means that plaintiff is disabled. Here, VE Shear testified that if plaintiff was prohibited from stooping he would not be precluded from the identified sedentary work, because he would be able to use a picker to pick something up or ask someone for help. AR at 75. As such, the VE's testimony does not conflict with SSR 96-9p because a complete inability to stoop does not automatically render a claimant disabled, and the VE addressed the issue.

# V.

## REMAND IS APPROPRIATE

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits). But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021.

Here, as set forth above, remand is appropriate because there are outstanding issues that must be resolved before it can be determined whether plaintiff is disabled. The ALJ must reconsider plaintiff's subjective complaint testimony and either credit his testimony or provide clear and convincing reasons to reject it. The ALJ also must reconsider and appropriately assess the opinions of treating physicians Dr. Choi and Dr. Almudhafar, and either credit their opinions or

provide specific and legitimate reasons supported by substantial evidence for rejecting them. The ALJ must also reconsider the other medical evidence as discussed above, and resolve any conflicts. The ALJ must then reassess plaintiff's RFC and proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.


DATED: March 25, 2020                    _____

SHERI PYM
United States Magistrate Judge